146 So. 148

## HAAS et al. v. HOSKINS et al.

### No. 31583.

July 20, 1932.

Rehearing Denied Oct. 4, 1932.

Lewis & Lewis, of Opelousas, for appellants.

Herold, Cousin & Herold, J. S. Atkinson, and Frederick E. Greer, all of Shreveport, Stubbs & Thompson, of Monroe, Jackson & Smith, of Shreveport, Pujo, Bell & Hardin, of Lake Charles, and L. L. Perrault, of Opelousas (John E. Green, Jr., of Houston, Tex., of counsel), for appellees.

LAND, J.

This is a petitory action brought by Mrs. Jeanette R. Haas, widow of Dr. John A. Haas, and by Nathalie Haas Hirsch, his sole heir and legal representative, to recover a tract of land in St. Landry parish containing 34.88 acres more or less.

Petitioners allege that the tract in dispute forms a part of a 150-acre tract acquired by decedent September 10, 1900, at sheriff's sale of the property of John Mornhinveg, and that Mornhinveg acquired 110 acres of this tract by deed from Henry L. Garland July 10, 1894, and 40 acres of this tract from Joseph P. Saizan, who acquired same from Henry L. Garland at tax sale, January 7, 1893.

In other words, petitioners claim ownership of this 34.88-acre tract through mesne conveyances from Henry L. Garland.

Defendants deny that the 34.88 acres sought to be recovered are included in the 150-acre tract, which they admit belongs to plaintiffs, but, on the contrary, insist that same lies east of, and adjoins, the 150-acre tract.

Gulf Refining Company of Louisiana, alleged to be in possession of the land in litigation under a mineral lease granted by W. H. Hoskins in 1926, W. H. Hoskins, the then owner of the land, and his vendees, J. A. Perkins, Andrew Moresi, and C. P. Dunbar, set up title to same. They aver that the disputed tract forms part of a larger body of land acquired by Hoskins from St. Landry Bank & Trust Company in 1920 by mesne conveyances from V. H. Sibille, who acquired the same by warranty deed in 1906 from J. R. Pavy and R. Lee Garland, who in turn trace their title to a sale of the property for the delinquent taxes of 1904, assessed in the name of the heirs of Charles Barre.

They further plead the prescription or peremption of three years, established by section 11 of article 10 of the Constitution of 1921, and like provisions of prior Constitutions, in bar of plaintiffs' attacks on the tax sale made to their authors, L. E. Littell and J. G. Lawler, and the prescription of ten years acquirendi causa.

In the alternative, these defendants rely on the title pleaded by the other defendants, Shell Petroleum Corporation (volume 1, p. 77), and the Garland heirs (volume 1, p. 102), under a compromise agreement which settled a controversy between defendants herein as to the title of the land claimed in this suit (volume 1, p. 151).

Defendants, in the further alternative, plead an estoppel based on the fact that the plaintiffs and their authors have so recognized and acknowledged in various transactions of title the ownership of defendants and their authors as to preclude their present claim (Answer, volume 1, p. 97).

And, in the further and last alternative, Gulf Refining Company prays, in the event the court should hold that the property in controversy belongs to plaintiffs, for judgment decreeing the property to be covered and affected by the mineral lease granted by plaintiffs to J. B. Ferguson, Jr., on August 5, 1926, and assigned by Ferguson to it on August 13, 1926, for the reasons and causes stated in article XXXIV, paragraph (3) of its answer (volume 1, p. 98).

The trial judge held that the plaintiffs had failed to show that their lands extend as far east as the tract of land, which is the subject of this suit, and for this reason that it was unnecessary to consider other questions presented in the case.

From a judgment rejecting their demands and dismissing their suit, plaintiffs have appealed.

The 150-acre tract, acquired by Dr. John A. Haas September 10, 1900, at sheriff's sale of the property of John Mornhinveg, is described as follows:

"150 acres near Port Barre, St. Landry Parish, La., bounded on the north by the property of Dr. J. P. Saizan; on the south by the property of W. Johnson; on the east by the property of Dr. J. P. Saizan; and on the west by property acquired by the deceased from V. H. Sibille at his succession sale of date January 31, 1919—all of which will more fully and completely appear by reference to a certified copy of said judgment hereto attached, made part hereof, and market Exhibit A." (Pet. art. 1).

The 110-acre tract sold by Henry L. Garland to John Mornhinveg July 10, 1894, and

forming part of the 150-acre tract herein claimed by petitioners, is described as:

"A tract of woodland in neighborhood of Barre's Landing, containing one hundred and ten acres, *being in the rear of the tract of land which was sold at tax sale to Dr. Jos. P. Saizan.* It is of six arpents front *and of depth* (sufficient) to make an area of one hundred and ten acres. It is bounded on one side by the Barre tract, which fronts on the Courtableau and on another by persons unknown to the vendor." (P-7, "G.")

As shown by map annexed to defendants' brief, the Barre tract, fronting on Bayou Courtableau, was to the north of the 110 acres of land conveyed by Garland to Mornhinveg. The clause in this deed, "*and of depth* to make an area of one hundred and ten acres," meant running *east* away from Bayou Teche. The original tract of 390 arpents, including the 150-acre tract claimed by petitioner, purchased by Henry L. Garland from Vincent Boagni in 1884, was described as a tract of land "*on* the Bayou Teche." So "depth," in all the deeds embracing parts of this tract, means running toward the east, away from Bayou Teche.

The 40-acre tract of land acquired January 7, 1893 by Jos. P. Saizan at tax sale from Henry L. Garland is described as follows:

"Forty acres of land, bounded north by D. P. Saizan, south by Wm. Johnson, east by Henry L. Garland, and west by Henry L. Garland."

Thereafter, in the same year, 1893, Joseph P. Saizan sold to John Mornhinveg: "Forty acres of land, bounded north by D. P. Saizan, south by Wm. Johnson, *east by Henry L. Gar-*

*land and west by Henry S. Garland,* the said land having been acquired by said J. P. Saizan at tax sale on the 7th day of January, 1893." ("H," P-8, P-9.)

The 150-acre tract claimed by petitioners was composed of the 40-acre tract just mentioned and the 110-acre tract. The location of this 40-acre tract is all important in this case as, in the description in the deed of 110 acres from Garland to Mornhinveg July 10, 1894, the 110-acre tract is described as being "*in the rear*" of the 40-acre tract sold by Garland at tax sale to Jos. P. Saizan in 1893; i. e., this 40-acre tract was declared to be the *western boundary* of the 110-acre tract, as contended by defendants in this case.

In the deed in 1893, from Saizan to Mornhinveg of the 40-acre tract, it is declared that this tract is bounded "*east* by Henry L. Garland," clearly meaning the 110-acre tract which Garland then owned, since he gave as *the western* boundary of this 110-acre tract the 40-acre tract under discussion, when he sold the 110-acre tract to Mornhinveg in 1894.

The description of this 40-acre tract, sold by Saizan to Mornhinveg in 1893, as bounded on the "west by Henry S. Garland," clearly means bounded on "the west by Henry L. Garland," as this is the western boundary given in the tax deed of the same 40 acres, from Garland to Saizan, in the same year, 1893.

It is true that Garland in 1893 did not own any land to the west of this 40-acre tract, since in 1890 he sold to Anatole Savant ("D"–31, Def. "A"), the 13 arpents he then owned to the west of this 40-acre tract. However, there can be no doubt in our minds that, when Saizan sold to Mornhinveg this 40-acre tract in 1893, the contracting parties still believed

Garland to be the owner of the 13 arpents to the west.

If "bounded *west* by Henry L. Garland," in the tax deed to the 40-acre tract, did not refer to land formerly owned by Henry L. Garland and lately sold by him to Anatole Savant, then the tax deed, under which plaintiffs claim, is null and void for want of description sufficient to identify the property, as 40 acres out of a strip of 150 acres would convey nothing. So the contention of plaintiffs that the western boundary in the tax deed from Garland to Saizan must be held to refer to land then owned by Garland, if sustained, would strip plaintiffs of all title to the 40-acre tract in question.

The description in the tax deed from Garland to Saizan is the same as that in the deed from Saizan to Mornhinveg and confirms the location of this 40-acre tract.

This interpretation of the description in the deed in question places the 40-acre tract, as shown on the map annexed to the opinion of the court at page 60, volume III of the transcript, and is in accordance with the contention of defendants. The 110-acre tract on this map is located between the 40-acre tract on the west and the 34.88-acre tract in dispute on the east.

Plaintiffs insist, however, that the western boundary line of the 40-acre tract must be moved eastward in the 150-acre tract until it would place the 40-acre tract under or south of the land then owned by D. P. Saizan, as he was named as the *northern* boundary in the tax deed.

D. P. Saizan at this time owned a strip of land north of the 150-acre tract consisting of

lots 20 and 21, as shown by defendants' map attached to brief filed in the case. At the time of the tax sale, Mrs. D. P. Saizan also owned north of the 150-acre tract lots 16, 17, 18 and 19, and her lands, as well as her husband's, were all assessed in the name of the husband, D. P. Saizan. ("D"–70, Def. "A.")

Since the 40-acre tract, described in the tax deed, is considerably wider than the D. P. Saizan tract of lots 20 and 21 on the north, and since the lands of D. P. Saizan and his wife together bounded *all* of the 40-acre tract on the north, it is not unreasonable to hold that that part of the tax sale description reading, "bounded north by D. P. Saizan," had reference to land owned by Mrs. D. P. Saizan and assessed to her husband, especially as a contrary holding would strike with nullity the tax title of plaintiffs to this 40-acre tract, for want of sufficient description to identify the land.

The 40-acre tract as herein located is wholly bounded on the north by the Saizan lands.

In the deed from Henry L. Garland to John Mornhinveg of the 110-acre tract, it is stated that this tract is bounded "on one side by the Barre tract, which fronts on the Courtableau." Plaintiffs contend that this description places the eastern end of the 110 acres under the "Barre land" shown in red on map "P–39," and includes the disputed area of 34.88 acres.

We have already shown that the 110-acre tract was bounded *on the west* by the 40-acre tract acquired at tax sale by Saizan from Garland in 1893.

The tract of land purchased by H. L. Garland from Vincent Boagni in 1884 is described as follows: "A tract of land *on the Bayou*

*Teche*, near Barre's Landing in this Parish, containing 390 arpents, *bounded on one side by the Barre Landing tract,* which formerly belonged to Honore Dejean, now to D. P. Saizan, Mrs. Lastie Dupre Melancon et al., *and on the opposite side by lands of Ovignac Carriere.*"

The property conveyed by this deed consisted of tracts 1 to 7, inclusive, of the sketch attached to defendants' brief, and extended from Bayou Teche on the west to the tract in dispute, marked "D" on the east. The Garland tract contained 390 arpents, with a width of 6 arpents. All of the land *north* of the Garland tract was known as the "Barre tract," which consisted of lots 1 to 26, as shown by map attached to defendants' brief, and as shown by ownership map prepared by abstractor Edwards, and marked "Defendant A."

The Garland tract was bounded *on the south*, "or the opposite side by lands of Ovignac Carriere," the author in title of William Johnson, shown on the sketch attached to defendants' brief as the owner of the land to the south of the Garland tract.

As *the western* boundary of the 110-acre tract is definitely fixed by the 40-acre tract purchased from Garland by Saizan at tax sale in 1893, and as the deed to the 110-acre tract declares that the land is "of a depth to make an area of one hundred and ten acres," the land must run *eastward* from the 40-acre tract, its *western* boundary, a distance sufficient to make 110 acres, thus fixing the eastern end of the Garland tract *far short* of the "Barre land" shown in red on map "P–39" of plaintiffs.

If there are two "Barre tracts" north of the 110 acres purchased by Mornhinveg from Garland in 1894, the Barre tract actually north of the whole 110 acres, as thus laid out, must be held to be the one contemplated in the deed.

Henry L. Garland at one time owned all of the land in the long narrow strip running eastward from Bayou Teche to the west line of the disputed tract of 34.88 acres. This strip, according to plaintiffs, contains 395 arpents, exclusive of the land in dispute, and, according to defendants, it contains only 390.-50 arpents.

The location which has been made of the plaintiffs' 150 acres gives them the full acreage called for by their deed, and gives also to each of the other landowners in the original Garland tract of 390.50 arpents the quantity of land called for by his deed, without encroaching on the disputed tract of 34.88 acres, claimed by defendants.

It is a significant fact that, in 1926, plaintiffs executed a mineral lease on their 150 acres to one J. B. Ferguson, Jr., and in this lease stated *the eastern boundary* of their land as "W. H. Hoskins," the 34.88 acres in dispute, and thereby excluded this tract from their deed, as the lower court did in this case.

The same engineer who drafted map "P–39" for plaintiffs in this case, showing their ownership of the land in dispute, in 1909 made a map of this section of country, and showed thereon that Dr. John A. Haas, then the owner of the 150-acre tract, did not own the disputed tract, but that it was owned by V. H. Sibille, the disputed tract being known as V. H. Sibille or Hoskins land. ("Def. C.")

The same engineer, in testifying for plaintiffs in this case, admitted that the disputed land was not in the original 390-arpent tract owned by Garland, and counsel for plaintiffs so admit in their brief. Plaintiffs not only allege that the disputed tract is within the 390-arpent tract, but their title to the 150-acre tract is necessarily based on the assumption that this is true. In making this allegation, plaintiffs put themselves out of court. (Pet., paragraphs X, XI, "P–12" and "P–13.")

The record abundantly establishes the fact that the disputed tract lies entirely *to the east* of the Garland 390 arpents, and forms no part of it. See maps "Def. A," made by abstractor Edwards; "Def. 67," made by engineer Doggett; and "P–42," made by plaintiffs' witness, Smith.

The record shows that landowners in the original Garland strip of 390 arpents, from Bayou Teche on the west to the west line of the 150-acre tract, as located by the lower court, in making sales of their lands subsequent to sales by Garland of the two pieces of land constituting the 150-acre tract, *recognized the western boundary* of the 150-acre tract as herein located.

(See ownership maps made by abstractor Edwards and engineer Doggett, "Def. A" and "Def. 67.")

The boundaries, as fixed by the lower court, give to every owner of the original 390-arpent tract—including the plaintiffs—the amount of the land called for in his deed. Any other holding would set aside acknowledged boundaries fixed in the deeds by other owners in the 390-arpent tract, and would give to the plaintiffs and others more land than their deeds call for.

The plaintiffs have failed to show that their lands extend as far east as the 34.88-acre tract in dispute in this case, and for this reason the trial judge found, and we find, that it is unnecessary to consider the other questions presented in this case.

Judgment affirmed.